UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SINGH RX, PLLC D/B/A SRX
SPECIALTY CARE PHARMACY, A
MICHIGAN PROFESSIONAL LIMITED
LIABILITY COMPANY, AND AMAN
DEEP SINGH, AN INDIVIDUAL,

　　　　Plaintiffs,

　　　　v.

SELECTIVE INSURANCE
COMPANY OF SOUTH CAROLINA,
A NEW JERSEY PROPERTY AND
CASUALTY INSURANCE COMPANY,
AMERICAN CASUALTY
COMPANY OF READING,
PENNSYLVANIA, A PENNSYLVANIA
PROPERTY AND CASUALTY INSURANCE
COMPANY, JANSSEN SCIENCES
IRELAND UNLMITED COMPANY,
AN INTERESTED PARTY, JANSSEN
PRODUCTS, LP, AN INTERESTED
PARTY, AND JOHNSON & JOHNSON,
AN INTERESTED PARTY.,

　　　　Defendants.

_____/

Case No. 22-cv-12732

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

1

<u>**OPINION AND ORDER: (1) DENYING** PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT AGAINST DEFENDANT SELECTIVE **[ECF No. 57]**;
**(2) GRANTING** SELECTIVE'S MOTION FOR SUMMARY JUDGMENT **[ECF No. 60]**;
**(3) DENYING** PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT AGAISNT DEFENDANT AMERICAN CASUALTY **[ECF No. 61]**;
AND
**(4) GRANTING** DEFENDANT AMERICAN CASUALTY'S MOTION FOR SUMMARY JUDGMENT **[ECF No. 58;**
AND
**(5) CANCELLING** BENCH TRIAL AND **MOOTING** SELECTIVE'S MOTION TO ADJOURN TRIAL **[ECF No. 75]**.</u>

## I.    Introduction

This is an insurance coverage dispute. Plaintiffs Singh RX, PLLC d/b/a SRX Specialty Care Pharmacy ("SRX") and Aman Deep Singh ("Singh") (collectively "Plaintiffs") filed a Complaint for Breach of Contract and Declaratory Relief (the "Complaint").[1] *See* ECF No. 1. The Complaint names two Defendants: Selective Insurance Company of South Carolina, a New Jersey property and casualty insurance company ("Selective"), and American Casualty Company of Reading Pennsylvania, a property and casualty insurance company ("American Casualty") (collectively "Defendants"). The dispute arises out of Plaintiffs' demand that Defendants defend and indemnify them in an underlying lawsuit brought in the United States District Court for the Eastern District of New York by Janssen

---

[1] The Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) and (3).

Sciences Ireland Unlimited Company, Janssen Products, LP, and Johnson & Johnson (the "Janssen Lawsuit"), discussed in greater detail *infra*.

Now before the Court are several motions. First, Plaintiffs filed a Motion for Judgment on the Pleadings or Alternatively Summary Judgment Against Defendant Selective Insurance Company of South Carolina on January 15, 2024. *See* ECF No. 57. Selective responded on February 13, 2024, and Plaintiffs replied on March 5, 2024. *See* ECF Nos. 65 and 72.

Second, Defendant American Casualty filed a Motion for Summary Judgment on January 16, 2024. *See* ECF No. 58. Plaintiffs responded on February 13, 2024, and American Casualty Company replied on March 5, 2024. *See* ECF Nos. 68 and 70.

Third, Selective filed a Motion for Summary Judgment on January 16, 2024. *See* ECF No. 60. Plaintiffs responded on February 13, 2024, and Selective replied on March 5, 2024. *See* ECF Nos. 67 and 69.

Lastly, Plaintiffs filed a Motion for Judgment on the Pleadings or Alternatively Summary Judgment Against American Casualty on January 16, 2024. *See* ECF No. 61. American Casualty responded on February 13, 2024, and Plaintiffs replied on March 5, 2024. *See* ECF Nos. 66 and 71.

The Court held oral argument on June 25, 2024. For the reasons set forth below:

1) ECF No. 57: Plaintiffs' Motion for Judgment on the Pleadings or Alternatively Summary Judgment Against Defendant Selective Insurance Company of South Carolina is **DENIED**;

2) ECF No. 60: Selective's Motion for Summary Judgment is **GRANTED**;

3) ECF No. 61: Plaintiffs' Motion for Judgment on the Pleadings or Alternatively Summary Judgment Against American Casualty is **DENIED**;

4) ECF No. 58: Defendant American Casualty's Motion for Summary Judgment is **GRANTED**.

5) ECF No. 75: Selective's motion to adjourn trial is **MOOT** and the bench trial scheduled for July 15, 2024, is cancelled.

## II.    Factual Background

SRX is a pharmacy that operates in Royal Oak, Michigan. Singh is a pharmacist and the principal of SRX. The subject matter of this dispute pertains to two separate insurance policies issued by Selective and American Casualty. Selective issued a Businessowners and Commercial Umbrella Policy to SRX for a period beginning on October 19, 2021, and ending October 19, 2022 (the "Business Owners Policy" and the "Commercial Umbrella Policy"). *See* ECF No. 18-1. American Casualty issued a Professional Liability Policy to SRX with an effective period of March 26, 2021 to March 26, 2022. *See* ECF No. 1-3, PageID.247.

In June 2021, Janssen, a pharmaceutical company, allegedly notified SRX that a prescription for "Symutza," an antiviral medication used to treat HIV type 1,

4

was filled from SRX. Though the bottle had "Symutza" on the label, it contained Prezcobix, a different prescription medicine used to treat HIV type 1.[2] ECF No. 60-2, PageID.1909. Symutza is a Janssen product. Singh allegedly discussed the issue with "Harris," a drug representative for a wholesaler (Safe Chain) from whom Plaintiffs had purchased pharmaceuticals, but SRX allegedly failed to stop purchasing from Safe Chain. *Id*. at PageID.1913-1917.

From July 2021 through July 2022, six letters addressed to Singh RX were sent by counsel for Janssen, *inter alia*, advising Plaintiffs of issues concerning the purchase and disbursement of counterfeit HIV medications. They also requested that Plaintiffs quarantine specified medication and comply with subpoenas related to two separate legal matters. *See* ECF Nos. 60-2, PageID.1920-30; ECF Nos. 60-5, 60-7, 60-8, 60-9, and 60-10. However, Singh testified that he did not recall receiving the letters. *See* ECF No. 60-2, PageID.1921.

The Janssen Lawsuit was filed on April 7, 2022, in the United States District Court for the Eastern District of New York by Johnson & Johnson and two subsidiaries: Janssen Sciences Ireland Unlimited Company and Janssen Products, LP (the "Janssen plaintiffs"). The complaint was amended on December 20, 2022.

---

[2] According to Janssen's complaint, "SYMTUZA® is a complete, single-tablet, once-a-day medication that contains an entire HIV combination therapy regimen in a single pill." ECF No. 1-4, PageID.325. By contrast, "PREZCOBIX® is not a complete HIV regimen" and must be used with "at least one other antiretroviral medication." *Id*. Janssen alleges that the product and supply chain pedigree were counterfeit. *Id*., at PageID.329.

It alleged that "SRX bought hundreds of counterfeit bottles from Safe Chain and Brooklyn-based Scripts long after a counterfeit," purchased by SRX from Safe Chain and dispensed to a customer, "was detected and brought to SRX's attention." ECF No. 17-3, PageID.1149. The complaint also alleged that "[s]ince the Wholesaler Defendants stopped selling HIV medication, SRX has been obtaining Janssen-branded HIV medication of unknown origin from unidentified unauthorized distributors." *Id*.

The Janssen plaintiffs asserted the following claims against SRX and Singh: (1) Count I, federal trademark infringement in violation of 15 U.S.C. § 1114(1)(a) (use of trademarks without consent in the sale of "counterfeit" products (ECF No. 1-5, PageID.475); (2) Count II, federal trademark infringement in violation of 15 U.S.C. § 1114(1)(b) (use of trademarked labels on counterfeit bottles) (ECF No. 1-5, PageID.476); (3) Count III, "false description and designation of origin in commerce" in violation of 15 U.S.C. § 1125(a)(1)(A) (ECF No. 1-5, PageID.477); (4) Count IV, federal false advertising in violation of 15 U.S.C. § 1125(a)(1)(B) (ECF No. 1-5, PageID.478); (5) Count V, federal dilution of mark in violation of 15 U.S.C. § 1125(c) (ECF No. 1-5, PageID.480); (6) New York dilution of mark and injury to business reputation in violation of New York General Business Law § 360-1 (ECF No. 1-5, PageID.481); (7) Count VII, New York Deceptive Business Practices in violation of New York General Business Law § 349 (ECF No. 1-5,

PageID.482); (8) Count VIII, common law unfair competition (ECF No. 1-5, PageID.482); (9) Count IX, common law unjust enrichment (ECF No. 1-5, PageID.483).

SRX and Singh submitted respective insurance claims to both Selective and American Casualty. On August 23, 2022, Selective, the insurer of the Business Owner's and Commercial Umbrella Policy, denied coverage for defense and indemnification. Selective does not believe that it has a duty to defend Plaintiffs in the Janssen lawsuit. *See* ECF No. 27, PageID.1498.

American Casualty denied defense and indemnification coverage under the professional liability policy for a variety of reasons discussed *infra*. ECF No. 36, PageID.1600.

Below, the Court will discuss all four of the pending motions. For clarity, however, the Court begins with the cross motions for summary judgment filed by Plaintiffs and Selective. The Court will subsequently address the cross motions for summary judgment filed by Plaintiffs and American Casualty Company.

## III.   Legal Standard

In their respective motions against Selective and American Casualty, Plaintiffs move for judgment on the pleadings under Fed. R. Civ. P. 12 (c) ("Rule 12(c)"), or in the alternative, for summary judgment under Fed. R. Civ. P. 56

("Rule 56"). The respective motions filed by Selective and American Casualty Company urge the Court to grant summary judgment.

In considering motions filed pursuant to Rule 12(c), the Sixth Circuit has determined that, "[w]hen the plaintiff, as opposed to the defendant, moves for judgment on the pleadings. . . [the court] ask[s] whether the plaintiff's petition, stripped of those allegations which are denied by the defendant's answer, would leave the petition stating a cause of action against the defendant." *United Food & Com. Workers, Loc. 1995 v. Kroger Co*., 51 F.4th 197, 202 (6th Cir. 2022), *reh'g denied*, No. 22-5085, 2022 WL 18431457 (6th Cir. Dec. 19, 2022), and *cert. denied sub nom*. *Kroger Ltd. P'ship I v. United Food & Com. Workers, Loc*. 1995, 143 S. Ct. 2496, 216 L. Ed. 2d 455 (2023) (internal citations omitted).

However, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The parties conducted discovery. Plaintiffs attach the coverage denial letters to their motions. Defendants attach a several exhibits, including, *inter alia*, the Janssen Lawsuit complaint and Singh's depositions. All these materials are pertinent to determining whether Defendants have duties to defend Plaintiffs in the Janssen Lawsuit. Therefore, the Court declines to exclude these materials and it treats all the pending matters as motions for summary judgment.

Under Rule 56, the Court may grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022). A party opposing a properly supported motion may not rest on mere allegations or denials but must establish specific facts showing a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A court properly grants summary judgment only when the evidence, taken in a light most favorable to the nonmoving party, shows that no genuine dispute of any material fact exists for trial. *Id*., at 249. Ultimately, the Court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*., at 251-252.

## IV. Michigan Law on The Duty to Defend/Indemnify, and Insurance Policy Enforcement and Interpretation

Where, as here, subject matter jurisdiction is based on diversity of citizenship, the substantive law of the forum state must be applied. *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015). Michigan is the forum state and Michigan law applies.

Under Michigan law, an insurer's duty to defend is broader than its duty to indemnify. *See Auto-Owners Ins. Co. v. City of Clare*, 446 Mich. 1, 15, 521 N.W.2d 480 (1994). The duty to defend arises from the language of the insurance contract itself. *Michigan Ed. Employees Mut. Ins. Co. v. Turow*, 242 Mich. App.

112, 117, 617 N.W. 64 (2003). An insurance company has a duty to defend its insured "'if the allegations of the underlying suit arguably fall within the coverage policy . . .'" *Allstate Indem. Co. v. Marcy*, No. 22-12363, 2023 WL 9004914, at *3 (E.D. Mich. Dec. 28, 2023) (*quoting Royce v. Citizens Ins Co*., 219 Mich. App. 537, 543, 557 N.W.2d 144 (1996)). In other words, "insurers escape their duty to defend only if the policy rules out any colorable interpretation permitting coverage." *Hamilton Specialty Ins. Co. v. Transition Inv., LLC*, 818 F. App'x 429, 432 (6th Cir. 2020) (*citing N. Bank v. Cincinnati Ins. Co*., 125 F.3d 983, 986 (6th Cir. 1997) ("The duty to defend is not limited by the language of the complaint. Rather, the insurer must look beyond the allegations to determine whether coverage is possible. The duty to defend [may] extend[] to allegations which are groundless, false or fraudulent.") (citations omitted).

As Michigan courts have held, "an insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Orchard, Hiltz & McCliment, Inc. v. Phoenix Ins. Co*., 676 F. App'x 515, 519 (6th Cir. 2017) (*quoting Citizens Ins. Co. v. Secura Ins*., 279 Mich.App. 69, 755 N.W.2d 563, 566 (2008)). In a case of doubt as to whether the complaint against the insured alleges liability of the insurer under the policy, the doubt must be resolved in the insured's favor. *See Id*. However, insurers do not have a duty to defend policy holders if the

"insurance plan unambiguously rules out coverage." *Hamilton Specialty Ins. Co.*, 818 F. App'x at 430.

The duty to indemnify, on the other hand, "arises only with respect to insurance afforded by the policy, whereas the duty to defend arises if a third party's allegations against the insured arguably come within policy coverage." *City of Warren v. Int'l Ins. Co. of Hannover*, 524 F. App'x 254, 258 (6th Cir. 2013) (citing *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 550 N.W.2d 475, 481 (1996)). If "the policy does not apply, there is no duty to defend." *Am. Bumper*, 550 N.W.2d at 481. And if there is no duty to defend, there is no duty to indemnify. *See id.*; *see also Cone v. Northfield Ins. Co.*, No. 13-CV-15096, 2015 WL 668118, at *6 (E.D. Mich. Feb. 17, 2015) ("[C]ourts applying Michigan law have found that if a duty to defend does not exist, a duty to indemnify will not arise either.").

Selective argues that exclusions preclude coverage under the policy. It is well established that "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Covington Specialty Ins. Co. v. Sweet Soul, Inc.*, No. 23-1480, 2024 WL 2053824, at *5 (6th Cir. May 8, 2024) (*quoting Auto-Owners Ins. Co.*, 489 N.W.2d at 434). However, coverage under a policy "'is lost if any exclusion in the policy applies to an insured's particular claims." *Hamilton Specialty Ins. Co.*, 818 F. App'x 429, 432 (6th Cir. 2020) (*quoting Century Sur. Co.*

*v. Charron*, 230 Mich.App. 79, 583 N.W.2d 486, 488 (1998) (per curiam). Therefore, "clear and specific exclusions must be given effect....'" *Id*.

Considering this framework, the Court must "determine what the [terms of the agreement are] and effectuate the intent of the parties.'" *Kelly v. Metro. Grp. Prop. & Cas. Ins. Co*., 810 F. App'x 377, 380 (6th Cir. 2020) (*quoting Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 489 N.W.2d 431, 433 (1992)). The analysis "always begins with the actual language used by the parties in the insurance policy itself.'" *Covington Specialty Ins. Co*., 2024 WL 2053824, at *5 (*quoting City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 122 (Mich. 2005)). Indeed, Michigan courts "construe an insurance policy in the same manner as any other species of contract, giving its terms their ordinary and plain meaning." *DeFrain v. State Farm Mut. Auto. Ins. Co*., 817 N.W.2d 504, 509 (Mich. 2012) (cleaned up).

Accordingly, the Court "cannot create ambiguity where none exists." *Auto-Owners Ins. Co*., 489 N.W.2d at 434. When the policy language is clear, courts must enforce the specific language of the contract. *See Heniser v. Frankenmuth Mut. Ins. Co*., 449 Mich. 155, 534 N.W.2d 502, 504–05 (1995). Under Michigan law, "[a]n insurance contract is not ambiguous merely because a term is not defined in the contract." *McGrath v. Allstate Ins. Co*., 290 Mich.App. 434, 802 N.W.2d 619, 622 (2010). Instead, "[a]ny terms not defined in the contract should

be given their plain and ordinary meaning, which may be determined by consulting dictionaries." *Id*. (citation omitted); *see also Bianchi v. Auto. Club of Mich*., 437 Mich. 65, 467 N.W.2d 17, 20 n.1 (1991) ("The terms of an insurance policy should be construed in the plain, ordinary and popular sense of the language used, as understood by the ordinary person.").

V.      **Analysis**

   A. **ECF Nos 57 and 60: Cross Motions for Summary Judgment Filed by Plaintiffs and Selective**

      1. **Terms of the Selective Policy**

Section II.A.1.a of the Policy provides that,

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply.

ECF No. 18-1, PageID.1302.

The Policy language demonstrates that Selective's insurance agreement for liability coverage in the Businessowners Coverage Form and Umbrella Coverage Form limit coverage to claims for "bodily injury," "property damage" or "personal and advertising injury." ECF No. 18-1, PageID.1302 and 1412. The Policy defines "Personal and advertising injury[,]" in relevant part, as "injury, including

consequential 'bodily injury' arising out of one or more of the following offenses"

under section II.A.1of the policy:

> (d). Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . .

> (f). The use of another's advertising idea in your 'advertisement'; or

> (e). Oral or written publication, in any manner, of material that violates a person's right of privacy;

> (g). Infringing upon another's copyright, trade dress or slogan in your "advertisement."

ECF No. 18-1, PageID.1316, 1397, and 1426. As discussed *infra*, Plaintiffs

contend that coverage applies under subsection (g).

Importantly, however, the Businessowners Coverage and Umbrella

Coverage Forms contain exclusions under section II.B.1 for: (1) "'[b]odily injury'

or 'property damage' expected or intended from the standpoint of the insured"; (2)

"'personal and advertising injury' caused by the rendering or failure to render any

professional services" (the "professional services exclusion"); and (3) "'personal

and advertising injury' arising out of the infringement of copyright, patent,

trademark, trade secret or other intellectual property rights."   ECF No. 18-1,

PageID.1304.

Plaintiffs advance significant argument about their entitlement to coverage

under section II.A.1 of the Policy. However, the Court does not reach the issue

because, as explained *infra*, the professional services exclusion precludes coverage. Thus, the Court will find that Selective does not have a duty to defend or indemnify Plaintiffs.

### 2. Selective Does Not Owe a Duty to Defend and Indemnify Plaintiffs in the Janssen Lawsuit Because The exclusion for "professional services" Applies.

As stated in the Businessowners Coverage and Umbrella Coverage Forms, the professional services exclusions preclude damages "caused by" or "arising out of" the "rendering or failure to render any professional service." ECF No. 18-1, PageID.1307 and 1416. The exclusions specifically designate as "professional services": (1) the rendering or failure to render "[p]rofessional health care services as a pharmacist" and (2) "services in the practice of pharmacy". *Id.*, at PageID.1416, 1308.

Plaintiffs submit that the respective exclusions in the Businessowners Coverage and Umbrella Coverage Forms "are identical." ECF No. 57, PageID.1801. As they say, "the allegations in the underlying Janssen suit involve the purchase and retail sale of medications using incorrect labels or trade dress, and arguably do not involve the 'rendering' of a 'professional service,' i.e. the 'practice of pharmacy.'" ECF No. 57, PageID.1799. In support of this position, Plaintiffs rely on *Kuznar v. Rashka Corp.*, 481 Mich. 169 (Mich. 2008).

The Policy exclusion at issue in the instant action pertains to services in the practice of a pharmacy, which are defined by the explicit terms of the policy as "professional services." *See* ECF No. 18-1, PageID.1308, 1416. Thus, *Kuznar* is inapplicable because the decision there concerned claims for medical malpractice against a pharmacy and a nonpharmacist employee. *Kuznar*, 481 Mich. at 181. Because the pharmacy did not have a licensed pharmacist on site, the pharmacy was not a "licensed health-care facility" as defined by the public health code, and the nonpharmacist employee was not a "licensed health-care professional." *Id*. For those reasons, the court determined that neither of them had a professional relationship with patients. *Id*. Thus, they could not be held directly liable for medical malpractice claims. *Id*.

Unlike the pharmacy in *Kuznar*, however, SRX is owned and operated by Singh, a licensed pharmacist with an advanced professional degree in the field. He bought medications from wholesalers, filled prescription orders, and allegedly dispensed mislabeled HIV medications to patients. By acting in these ways, Plaintiffs engaged in the "practice of a pharmacy[,]" which satisfies the unambiguous definition of "professional services" written in the text of the policy.

However, even if the explicit definition of "professional services" were not clear and unambiguous, Michigan courts have defined "professional services" as "those involving specialized skill of a predominately intellectual nature." *Orchard,*

*Hitlz & McCliment, Inc. v. Phoenix Ins. Co.*, 67 Fed.Appx. 515, 520-521 (6th Cir. 2017) (*citing Westfield Ins. Co. v. D & G Dollar Zone*, 2013 WL 951086, at *4 (Mich. Ct. App. Feb. 28, 2013) (a professional service is "one arising out of a vocation or occupation involving specialized knowledge or skills, and the skills are mental as opposed to manual."). *See e.g.*, *D & G Dollar Zone*, 2013 WL 951086, at *4 (Applying a similar professional services exclusion and concluding that "the term 'professional service,' as used in instant exclusions, does not contemplate the mere sale of goods at a dollar store.").

Purchasing medication from wholesalers, and assuring that prescriptions are filled with proper medications, dosage, and labeling require specialized skills and knowledge that rely on the exercise of a pharmacist's mental faculties. These activities also compose the primary services offered in the practice of a pharmacy, unlike the mere sale of prescription medications.

Indeed, Selective points to the Michigan Public Health Code, which specifies several activities involved in the "[p]ractice of a pharmacy." These activities include the "encouragement of safety and efficacy in the prescribing, dispensing, administering, and use of drugs and related articles for the prevention of illness, and the maintenance and management of health." M.C.L § 333.17707(8). And "[p]rofessional functions associated with the practice of

pharmacy" includes the "compounding, dispensing, safe storage, and distribution of drugs and devices." *Id*., § 333.17707(8)(c).

Plaintiffs' interpretation of the policy—suggesting that the allegations stated against them in the Janssen Lawsuit do not amount to "services in the practice of a pharmacy" or "professional services"—is implausible. Here, the insurance policy unambiguously rules out coverage. Further, Michigan courts have generally interpreted professional services exclusions broadly. *See, e.g., Am. Fellowship Mut. Ins. Co. v. Ins. Co. of N. Am*., 90 Mich.App. 633, 282 N.W.2d 425, 428 (1979) (the court found that the "professional services" exclusion of a life insurance contract referred to "any business activity conducted" by the insured company).

Michigan courts have also applied professional services exclusions to acts not involving a specialized skill, finding that those acts were reasonably related to the overall provision of professional services. In *White v. Auto–Owners Ins. Co*., Nos. 265380, 265389, 2006 WL 664206, at *3 (Mich. Ct. App. Mar. 16, 2006), a doctor was denied general liability coverage for claims alleging that he failed to "properly retrieve, transport, maintain and deliver the pathology report [to a patient] as part of the nonprofessional duties of the business", and his staff "failed to properly retrieve telephone and facsimile messages, place messages in the appropriate locations and collect, sort, file and forward the mail containing the

18

report to the proper recipient." *Id*. Denying relief for the doctor, the Michigan Court of Appeals reasoned that "[a]ccording to the underlying complaint, Dr. White had a professional duty as [a] physician to obtain, review and report the biopsy findings. Because some portions of that duty included clerical tasks does not change the overall nature of the duty." *Id*.

Michigan courts have also found that an engineering firm hired to conduct a soil investigation had to seek liability coverage from its professional liability insurer rather than its general liability insurer when two of its employees damaged telephone lines while drilling for soil samples without first calling "Miss Dig," Michigan's utility notification system. *Centennial Ins. Co. v. Neyer, Tiseo & Hindo, Ltd*., 207 Mich.App. 235, 523 N.W.2d 808, 810 (1994). The firm argued that its failure to call "Miss Dig" did not encompass a professional service. *Id*. And the Michigan Court of Appeals held that, because the decision to drill before calling "Miss Dig" was "preliminary to, and part of, the 'professional service' of conducting a soil investigation," liability coverage was precluded under the insurer's general liability policy exclusions. *Id*.

Similar to the professional duties owed in *White* and *Centennial Ins. Co*., Plaintiffs had some professional duty as pharmacy/pharmacist to fill prescriptions with the correct medications and proper labeling, which they allegedly failed to do. As a pharmacy and pharmacist, Plaintiffs' conduct lands within a broad

interpretation of the policy's professional services exclusions. The Court finds that the Janssen Lawsuit arose from or was caused by Plaintiffs' alleged conduct in purchasing counterfeit medications and filling prescriptions with the wrong medications and labels. Therefore, the Janssen Lawsuit arose from or was caused by Plaintiffs' rendering—or failing to properly render—professional services involved in the practice of a pharmacy.

Resisting this conclusion, Plaintiffs cite *St. Paul Fire & Marine Ins. Co. v. Quintana* for the proposition that a "professional service" requires the "use or application of special learning or attainments of some kind." 419 N.W.2d 60 (Mich. App. 1988). However, as explained *supra*, *Quintana* does not support the conclusion that Plaintiffs ask the Court to reach. In *Quintana*, the court held that a technician's sexual assault of a patient did not fall "within the purview of being a 'professional service'" under the insurance policy because it was not at all related to the technician's professional duties. *Id*., at 62. Here, however, the Janssen Lawsuit pertains directly to Plaintiffs' business activity involving their specialized learning or skill in operating a pharmacy and being a pharmacist. Here the underlying lawsuit is excluded from coverage by the professional services exclusion.

Plaintiffs also rely on the Nebraska and Idaho cases cited in the *Quintana* court's analysis to support the proposition that "professional services" do not

20

encompass "the production or sale of commodities." *Id*., at 62 (citing *Hirst v. St Paul Fire & Marine Ins Co*., 683 P.2d 440, 444 (Idaho App. 1984) (*quoting Marx v. Hartford Accident & Indemnity Co*, 157 N.W.2d 870, 871-72 (Neb. 1968)). As stated by the caselaw, however, Plaintiffs dealings in the production or sale of commodities are related to their operations as a licensed pharmacy, so the fall within the purview of the professional services exclusion.

All claims against Plaintiffs—alleged in the Janssen Lawsuit—arise from Plaintiffs' rendering of professional services. Consequently, there is no arguable basis for applying coverage. Thus, Selective does not have a duty to defend or indemnify Plaintiffs. The Court will deny Plaintiffs' motion and grant Selective's motion for summary judgment.

The Court turns next to discuss whether American Casualty Company Plaintiffs a duty to defend and indemnify under the professional liability policy.

### B. ECF Nos. 58 and 61: Plaintiffs' and American Casualty Company's Cross Motions for Summary Judgment.

#### 1. Terms of the American Casualty Company

Plaintiffs were insured under an American Casualty Professional Liability Policy, which includes two "Coverage Agreements" relevant to this action: Coverage Agreement A. "Professional Liability" (the "Professional Liability Coverage Agreement"); and Coverage Agreement C. "Personal Injury Liability"

(the "Personal Injury Coverage Agreement"). Both coverage agreements are part of the "Healthcare Providers Professional Liability Coverage Part". ECF No. 1-3, PageID.255. For the purposes of its motion for summary judgment, American Casualty does not challenge that both SRX and Singh qualify as insureds under the Professional Liability Coverage Part. ECF No. 58, PageID.1830.

> The Professional Liability Coverage Part states that:
>
> [Selective] ha[s] the right and duty to defend any **claim** that is a **professional liability claim**, [or] **personal injury claim** . . . [Selective] will:
>
> > A. do this even if any of the charges of such **claim** are groundless, false or fraudulent; and
> >
> > B. investigate and settle any **claim**, as we feel appropriate.
>
> Our payment of the applicable limit of liability ends our duty to defend or settle. We have no duty to defend any **claims** not covered by this Coverage Part.

ECF No. 1-3, PageID.258[3]

> For professional liability claims, the Professional Liability Coverage Agreement applies. It states in relevant part:
>
> We will pay all amounts, up to the Professional Liability limit of liability stated on the **certificate of insurance**, that **you** become legally obligated to pay as a result of a **professional liability claim**

---

[3] The "DEFNITIONS" section of the policy provides that, "For purposes of this Policy, words in bold have the meaning set forth below. However, any bolded word referenced in these Common Policy Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part[.]" ECF No. 1-3, PageID.251.

arising out of a **medical incident** by **you** or by someone for whose **professional services you** are legally responsible.

ECF No. 1-3, PageID.255 (emphasis in original). The text of the policy specifically defines a "professional liability claim" as "a **claim** arising out of a **medical incident**." *Id*., PageID.258. A "**[m]edical Incident**" is defined as "any act, error or omission in **your** providing professional services which results in **injury** or **damage**." *Id*.

"Damage" means: "1. physical **injury** to tangible property, including all resulting loss of use of that property; or 2. loss of use of tangible property that is not physically injured." *Id*., PageID.252. "Injury" means "bodily **injury**, sickness, disease, mental or emotional distress sustained by a person, or death." *Id*., PageID.258.

The policy also provides that a "[m]edical incident does not include a . . . **personal injury**." *Id*. The insured's "professional services", which must give rise to "injury" or "damage" for a claim to be covered, are defined in relevant part as:

> Those services for which **you** are licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency responsible for maintaining the standards of the profession(s) shown on the certificate of insurance and which **you** perform as, or on behalf of, the **named insured**[.]

*Id*. The profession shown on the certificate of insurance is a pharmacy practice.

The Professional Liability Coverage Form applies for amounts that the insured is legally obligated to pay as a result of a professional liability claim

23

arising out of a medical incident by the insured. To be covered, the claim must arise out of an act, error, or omission by the insured in providing professional services, and it must result in physical property damage or bodily injury. And the services must have been performed by one who is licensed to perform within the scope of practice for a pharmacy, as recognized by the regulatory agency responsible for maintaining the standards of practice for pharmacists.

The contract distinguishes between professional liability claims and personal injury claims. An insured may seek coverage under either section of the Professional Liability Coverage Part. However, the Professional Liability Coverage Agreement does not include coverage for claims like those arising in the Janssen Lawsuit.

For these reasons, Plaintiffs' argument focuses on the amended definition of a "claim[,]" which, in their view, "conflicts" with "[t]he more specific Personal Injury coverage form" that "defines 'Personal Injury Claim' to mean 'a claim arising out of personal injury'[,] which the policy defines to include a number of the claims alleged in the JANSSEN lawsuit[.]" ECF No. 68, PageID.2193. Plaintiffs also point to a provision of the Professional Liability Coverage Part that states that "if any provision in the Common Policy Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part."

ECF No. 1-3, PageID.249. For purposes of this Opinion the Court assumes *arguendo* that this provision applies when there is a conflict between certain terms stated in the amendment and the Personal Injury Coverage Agreement.

> The Personal Injury Coverage Agreement states:
>
> We will pay all amounts, up to the **Personal Injury** Liability limit of liability stated on the **certificate of insurance**, that **you** become legally obligated to pay as a result of a **personal injury claim** arising out of **personal injury**.

*Id.*, PageID.255. A personal injury claim is defined as "a **claim** arising out of **personal injury**." *Id.*, PageID.258.

> "**Personal injury**" is defined as:
>
> **[I]njury** arising out of one or more of the following offenses committed in the conduct of your **professional services**:
>
> 1.  testimony given at or arising out of inquests;
>
> 2.  malicious prosecution;
>
> 3.  false arrest, detention, imprisonment, wrongful entry or eviction or other invasion of the right of private occupancy;
>
> 4.  libel, slander or other disparaging materials;
>
> 5.  a violation of an individual's or entity's right to privacy;
> 6.  assault, battery, mental anguish, mental shock or humiliation;
>
> 7.  misappropriation of advertising ideas, trade secrets, or style of doing business; or
>
> 8.  infringement of patent, copyright, trademark, trade name, trade dress, service mark, service name, logo, title or slogan.

*Id.*, PageID.253.

Notably, the amendment does not alter this definition of "personal injury". Instead, the Section of the policy entitled, "The Amended Definition of Claim Endorsement Health Care Provider Professional Liability, General Liability and Workplace Liability Coverage Parts" (the "Endorsement"), provides an amended definition for a "claim[,]" which was previously defined in the section entitled: "Common Policy Conditions." "Claim" is not defined in the specific Personal Injury Coverage Agreement. The amendment states that:

> Solely as respects the Professional Liability Coverage Part, the General Liability Coverage Part and the Workplace Liability Coverage Part, the **COMMON CONDITIONS**, the section entitled **DEFINITIONS**; the definition of **"claim"** is deleted in its entirety and replaced as follows:
>
> "**Claim**" means a demand for money or services alleging **injury** or **damage**. **Claim** also means the filing of a suit or the starting of arbitration proceedings naming **you** and alleging **injury** or **damage**. However, no demand for money or services alleging **injury** or **damage** or filing of suit or starting of arbitration proceedings naming **you** and alleging **injury** or **damage** is a **claim** unless such demand is made, such suit is filed or such arbitration proceeding is started:
>
> A. As respects the Professional Liability Coverage Part:
>
>> 1. by a natural person to whom **you** or someone for whom **you** are legally liable, provided **professional services**, but solely for such natural person's **injury** or **damage**; or
>>
>> 2. by such natural person's family member, legal guardian or estate, but solely for **injury** or **damage**[.]

26

*Id.*, at PageID.275.

Considering the explicit terms of the contract, the Court will discuss the applicable law and analysis below.

### 2. Whether American Casualty Owes a Duty to Defend and Indemnify Plaintiffs

In its motion for summary judgment, and its response to Plaintiffs' motion, American Casualty avers that "[t]he Underlying Lawsuit simply does not qualify as a claim under the" Professional Liability Coverage Part because: "(1) Janssen is not a natural person, (2) Singh did not provide professional services to Janssen[,] and (3) Janssen does not seek damages that qualify as injury or damage as defined within policy." ECF No. 58, PageID.1834.

American Casualty submits that "[t]he definition of claim requires that 'suit is filed by a natural person.' Each of the Janssen entities may be a 'legal person,' but not a 'natural person' and, therefore, Janssen's Underlying Lawsuit cannot qualify as a claim." *Id*. at PageID.1835. On the other hand, Plaintiffs believe that the policy "has conflicting definitions of the word 'claim', one of which appears in the general 'Common Policy Conditions' form, and the other appearing the more specific 'Personal Injury' coverage form." ECF No. 61, PageID.2046.

The definition of the term "claim" was stated in the "Common Policy Conditions" section of the policy as "a demand for money or services alleging injury or damage[,]" and "the filing of a suit or the starting of arbitration

proceedings naming you and alleging injury or damage." ECF No. 1-3, PageID.252. However, it was amended to, in effect, require, as stated *supra*, that claims be filed by natural persons. This amendment explicitly applied to "the Professional Liability Coverage Part[,]" the "COMMON CONDITIONS[,]" the "section entitled DEFINITIONS;" and the amendment stated that "the definition of 'claim' is deleted in its entirety and replaced. . ." *Id*. The policy unambiguously designates the Professional Liability Coverage Part as being composed of several coverage agreements, including the two respective Coverage Agreements for Professional Liability and Personal Injury.

The definition of a "claim", as amended, applies to the Personal Injury Coverage Agreement because they are both part of the Professional Liability Coverage Part. The definition of a "personal injury claim" stated in the specific coverage agreement specifies that a "claim" for "personal injury" is required, and it defines "personal injury", but it does not define a "claim." Given the amendment, the unambiguous terms policy require that the insured must be named as a defendant in proceedings that have been filed by a natural person or a natural person's family member, if the defendant provided them professional services. That suit must also allege physical damage or loss of use of tangible property; or bodily injury, sickness, disease, mental or emotional distress sustained by a person, or death. For these reasons, the Court will find that amended definition of a

"claim" under the Professional Liability Coverage Part does not conflict with the definition of a "personal injury claim" stated in the specific Personal Injury Coverage Agreement. Reading the policy as a whole, it requires—as an element of "personal injury claims"—that an underlying "claim" or lawsuit be filed by a natural person.

Plaintiffs do not dispute that the none of the Janssen Plaintiffs are natural persons. Thus, in these circumstances, the policy rules out any colorable interpretation permitting coverage for the Janssen lawsuit, which does not qualify as a "claim" under the policy.

Notably, Plaintiffs assert that,

> in denying coverage American Casualty maintains that personal injury claims are not covered unless they are brought by a "natural person" and allege bodily injury or property damage. This interpretation of the policy is nonsensical; it would require patients to bring business tort claims against their pharmacist alleging bodily injury or property damage. Since no factual scenario could give rise to such a claim, American Casualty's interpretation of the policy would render the personal injury coverage entirely illusory.

ECF No. 68, PageID.2186.

The Court will address this argument below.

### 3.  Whether the Doctrine of illusory Coverage Applies

"An 'illusory contract' is defined as an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation. The insubstantial promise renders the agreement unenforceable." *Cincinnati Ins. Co. v.*

*Hall*, 2013 WL 3107640 at * 5 (Mich. App. 2013). By extension, "[a] similar, more specific concept exists in the realm of insurance. The 'doctrine of illusory coverage' encompasses a rule requiring an insurance policy to be interpreted so that it is not merely a delusion to the insured." *Amir v. AmGuard Ins. Co*., 606 F. Supp. 3d 653, 667 (E.D. Mich. 2022) (*quoting Id*.).

An insurance policy may not be stricken as illusory "if there is any manner in which the policy could be interpreted to provide coverage." *Id*.; *see also Lattimore-Wiegand v. State Farm Mut. Auto. Ins. Co*., 2013 WL 5592891 at *3 (E.D. Mich. 2013) ("As long as there is 'any manner in which the policy could be interpreted to provide coverage,' the challenged policy provision is not illusory."). The doctrine of illusory coverage "is applicable where part of the insurance premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *See Employers Mut. Cas. Co. v. Helicon Associates, Inc*., 880 N.W.2d 839, 843 (Mich Ct. App. 2015), rev'd on other grounds, 894 N.W.2d 545 (Mich. 2017), *citing Ile v. Foremost Ins. Co*., 809 N.W.2d 617 (Mich. Ct. App. 2011), rev'd on other grounds, 823 N.W.2d 426 (Mich. 2012).

Under its plain language, the amended definition of claim clarifies that the intended scope of coverage for the Personal Injury Coverage Agreement is limited to claims brought by natural persons who received professional services and

30

allegedly suffered bodily injury or property damage, or loss of use of tangible property. By these terms, commercial disputes initiated solely by corporate entities, such as the Janssen Lawsuit, are not within the Professional Liability Coverage Part's scope of coverage. The policy provides coverage for lawsuits brought by natural persons or their representatives and allege a "personal injury[,]" such as "misappropriation of advertising ideas, trade secrets, or style of doing business; or infringement of patent, copyright, trademark, trade name, trade dress, service mark, service name, logo, title or slogan." ECF No. 1-3, PageID.253. In these circumstances, the Court does not find that the coverage is illusory.

## VI.   Conclusion

For the reasons set forth above:

1) ECF No. 57: Plaintiffs' Motion for Judgment on the Pleadings or Alternatively Summary Judgment Against Defendant Selective Insurance Company of South Carolina is **DENIED**;

2) ECF No. 60: Selective's Motion for Summary Judgment is **GRANTED**;

3) ECF No. 61: Plaintiffs' Motion for Judgment on the Pleadings or Alternatively Summary Judgment Against American Casualty is **DENIED**;

4) ECF No. 58: Defendant American Casualty's Motion for Summary Judgment is **GRANTED**.

5) ECF No. 75: Selective's motion to adjourn trial is **MOOT,** and the bench trial scheduled for July 15, 2024 is cancelled.

**SO ORDERED.**

Dated:  July 10, 2024                                   /s/Gershwin A. Drain
                                                        GERSHWIN A. DRAIN
                                                        United States District Judge


### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 10, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager